IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| COURTNEY PARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 16-1178-JDT-cgc |
| | ) | |
| MICHAEL PARRIS, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER TO MODIFY THE DOCKET,
DENYING MOTION TO APPOINT COUNSEL (ECF No. 13),
DISMISSING AMENDED COMPLAINT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On June 24, 2016, Plaintiff Courtney Partin, who is currently incarcerated at Northwest Correctional Complex (NWCX) in Tiptonville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) In response to the Court's deficiency order (ECF No. 3), Partin filed a motion to proceed *in forma pauperis* on July 5, 2016 (ECF No. 4). The Court subsequently granted leave to proceed *in forma pauperis*, assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b), and dismissed the complaint for failure to state a claim. (ECF No. 5 at 1-7.) However, the Court also granted leave to file an amended complaint without thirty days. (*Id.* at 7-8.) Partin filed a timely amended complaint on August 4, 2016. (ECF No. 10.) Pursuant to the amended complaint, the Clerk is DIRECTED to record the Defendants as

NWCX Warden Michael Parris; NWCX Corrections Officer Joseph Woodard; NWCX Security Threat Group (STG) Coordinator First Name Unknown (FNU) Rogers; NWCX Internal Affairs Officer David Ables; Tennessee Department of Correction (TDOC) Commissioner Tony Parker; NWCX Incident Commander Elizabeth Warden; NWCX Disciplinary Board Officer Sergeant FNU Cagle; and Dr. FNU Tucker.[1] Other than the State of Tennessee, the Defendants are sued only in their individual capacities. (ECF No. 10 at 2, 4.)

## I. The Amended Complaint

Partin alleges that at about 5:30 p.m. on June 14, 2016, he was in the "care, custody, and control" of Defendant Parris at the NWCX when there was a lockdown and search by "Strike Force One" in Unit 12. Defendant Parris was present at the time. (ECF No. 10 at 5.) Forty inmates were taken to the bottom floor, where Partin and fellow inmate James Couley were taken out of line from the others and placed against the wall. (*Id.*) Partin and Couley were told to get on their knees, but Partin's knees began hurting and he began shaking so much that he asked to be allowed to sit another way. (*Id.*) Defendant Woodard was "talking bad" to Partin and tried to throw him, causing Partin to go to his knees with his hands behind his back. (*Id.*) Six to ten unknown officers then attacked Partin by tackling, punching,

---

[1] Partin also sues thirteen John Doe officers. Service of process cannot be made on unidentified parties. The filing of a complaint against a "John Doe" defendant does not toll the running of the statute of limitation against that party. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968). In addition, Plaintiff sues the collective "Medical Service" at NWCX. This general designation does not adequately identify any entity providing medical care at the NWCX.

kicking and scratching him, squeezing his genitals, tasering him, stomping on his foot, twisting his leg, and putting a knee on his head as he lay on the floor. (*Id.* at 5-6; *see also* Exs. 1-3 & 11-18, ECF Nos. 10-1 to 10-3 & 10-13 to 10-20.) The officers "lunged" Partin into the shower and one of them dropped all his weight on Partin, causing an open wound over Partin's right eye from hitting the shower drain. (ECF No. 10 at 6.)

Defendant Rogers was standing at the shower door when Partin turned around, and he removed Partin from the shower and replaced the zip ties around Partin's wrists, which were causing Partin's arms to swell, with handcuffs. (*Id.*) Partin contends that as a result of the assault he suffers from a permanent visible scar to his face, pain in his right knee, and sharp pain in both elbows when pressure is applied. His right hand is numb. Additionally, Partin's left knee, right foot, and shin were bleeding from the assault; he had taser marks on his back and right leg, a mark on his left jaw, a cut on his face, and bruising on both sides of his face, chest, elbows, shoulders, and legs. (*Id.* at 6-7.)

Defendant Rogers and two other officers escorted Partin to medical services at about 6:00 p.m. (*Id.* at 7.) Partin contends he was in a lot of pain and that he asked Defendant Tucker to stitch up his head; however, he alleges that he was denied treatment and taken to Unit 4 segregation while still bleeding and with bare feet, wearing boxers and a t-shirt. (*Id.*) Partin was charged with the disciplinary infraction of defiance (Ex. 1, ECF No. 10-1) and contends he was held in segregation for 21 days without a hearing on that charge; he was then released from segregation. (ECF No. 10 at 7.)

Partin further alleges that on June 15, 2016, Royce York, who is not a party to this complaint, sent Partin to have drug test. (*Id.*; *see also* Ex. 4(A) & 4(B), ECF Nos. 10-4 & 10-5 ) Partin informed Officer York that he needed to go to medical because he has a documented disability in that he cannot urinate every two hours. (ECF No. 10 at 7.) However, Partin was charged with a disciplinary infraction for refusing a drug test and was found guilty by Defendant Cagle on June 20, 2016, despite Cagle's prior knowledge of Partin's condition. (*Id.* at 8; *see also* Exs. 4-10, ECF Nos. 10-4 to 10-12.) Partin contends that, pursuant to TDOC policy, he should have been permitted to have an alternative form of drug testing, such as a blood test. (ECF No.10 at 8; *see also* Ex. 19 at 2, ECF No. 10-21.)

On June 16, 2016, after seeing Nurse Zackery in the medical department, Partin asked for an Investigative Report of Injury but was told no report existed. (ECF No. 10 at 8-9.) Partin states that also on June 16, 2016, he asked Defendant Ables, who allegedly was at the clinic two days earlier when Partin was taken to medical after the incident, for an investigation and for medical treatment. (*Id.* at 9.) However, Defendant Ables later informed Partin that he did not have responsibility for the incident. (*Id.*)

On June 21, 2016, Partin states that he saw Nurses David and Brenda, who made a note of his wounds. (*Id.*) He contends that although he had been requesting medical treatment since the incident on June 14, 2016, he did not receive any treatment until he was given Naproxen for pain on July 3, 2016. (*Id.* at 8.) On July 8, 2016, Partin was taken to the STG office, where pictures were made of his wrist, head and face. (*Id.* at 9.) He saw Defendant Tucker on July 14, 2016, and reported the pain in his elbows, right knee and

hands, but Defendant Tucker told him that the pain and hand numbness would go away. (*Id.*) On July 20, 2016, Defendant Rogers allegedly told Partin that he would find out what was being done, including finding out why medical had not been treating him. (*Id.* at 9-10.)

Partin filed a grievance with Captain Perkins on June 17, 2016, that was returned as inappropriate, but Partin mailed a copy of the denied grievance to Defendant Parker on July 7, 2016. (*Id.* at 10; *see also* Ex. 12, ECF No. 10-14.) Partin's lawyer then sent a letter to Defendant Parris regarding the June 14, 2016 incident, asking for information about the incident and photographs of Partin's injuries. (ECF No. 10 at 10; *see also* Ex. 2, ECF No. 10-2.) Partin alleges that he has not been able to work since the aforementioned incident and that he is suffering in pain, needs treatment, and is in fear for his physical safety. (ECF No. 10 at 10.)

Partin filed another brief amendment to the complaint on September 14, 2016, in which he alleges that on August 31, 2016, he was seen by optometrist Dr. Tom Manning. (ECF No. 12.) Dr. Manning allegedly informed Partin that his right eye was damaged in the June 14, 2016, incident and that he needed a specialist. (*Id.*) It appears that Dr. Manning also prescribed eye drops, which Partin received on September 7, 2016. (*Id.*)

Partin contends the actions of the Defendants violated his right to due process under the Fourteenth Amendment and amounted to cruel and unusual punishment under the Eighth Amendment. (*Id.* at 10-13.) He also asserts claims of negligence and assault and battery. (*Id.* at 11.) Partin seeks both compensatory and punitive damages. (*Id.* at 3.)

## II. Analysis

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). "[P]leadings that . . . are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. In addition, although the court "primarily considers the allegations in the complaint . . . exhibits attached to the complaint also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

Defendant Parris cannot be held liable merely because he was allegedly present at NWCX during the lockdown. Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his or her subordinates, but fails to act, generally cannot be held liable in his or her individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). The complaint contains no allegations demonstrating that Defendant Parris witnessed or was involved in the alleged excessive force. Partin also does not allege that Parris was told about the incident after it occurred or that he had any opportunity to prevent what happened.

Partin also does not sufficiently state a claim against Defendants Ables, Rogers or Parker for failing to investigate or take remedial measures to the extent they were aware of

7

his grievances and complaints. A failure to take corrective action in response to an inmate grievance or complaint ordinarily does not supply the necessary personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

Although failure to investigate may give rise to § 1983 supervisory liability under appropriate circumstances, *see Walker v. Norris*, 917 F.2d 1449, 1457 (6th Cir. 1990) and *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir. 1985), the reasoning in *Walker* and the analysis in its progeny teach that evidence of a failure to investigate can establish only municipal liability. In *Dyer v. Casey*, No. 94-5780, 1995 WL 712765, at *2 (6th Cir. Dec. 4, 1995), the Court stated that "the theory underlying [*Marchese*] is that the municipality's failure to investigate or discipline amounts to a 'ratification' of the officer's conduct."

In *Walker*, the Sixth Circuit distinguished *Marchese* because the Court "imposed the broad investigative responsibilities outlined in *Marchese* upon the Sheriff in his official capacity." 917 F.2d at 1457 ("The Sheriff is sued here in his official capacity and in that capacity, he had a duty to both know and act."). In 1998, the Sixth Circuit affirmed the dismissal of a claim of supervisory liability based on a failure to investigate, stating:

> Young's claim against defendants McAninch and Goff is based solely on their alleged failure to investigate defendant Ward's behavior towards Young. Although Young stated that defendants McAninch and Goff had knowledge

8

of his allegations against defendant Ward, this is insufficient to meet the standard that they either condoned, encouraged or knowingly acquiesced in the misconduct.

*Young v. Ward*, No. 97-3043, 1998 WL 384564, at *1 (6th Cir. June 18, 1998). *See also Loy v. Sexton*, 132 F. App'x 624, 627-28 (6th Cir. 2005) (relying on *Walker* to reject a claim of failure to investigate in part because the defendants were subject to liability only in their individual capacities). In this case, Defendants Ables, Rogers, Parker and Parris are employees of the State of Tennessee. Therefore, they cannot be liable for money damages in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that states and state officials acting in their official capacities are not "persons" subject to liability for money damages under § 1983).

Partin alleges that Defendants Cagle and Warren denied him a hearing on the disciplinary charge of defiance, yet he was held in segregation for 21 days. He further alleges that Defendant Cagle wrongly determined that he was guilty of refusing a drug test. These allegations are construed as Fourteenth Amendment procedural due process claims, which depend upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993).

The allegation that Plaintiff was held in segregation for three weeks pending a disciplinary hearing on the defiance charge does not state a claim for procedural due process even though the hearing never occurred. An inmate's right to due process arises only if a restriction implicates a constitutionally protected liberty interest. *Wilkinson v. Austin*, 545

U.S. 209, 221 (2005). In general, an inmate does not have a liberty interest in a particular security classification or in freedom from administrative segregation. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Montanye v. Haymes*, 427 U.S. 236, 243 (1976); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). The complaint does not allege that the conditions experienced by Plaintiff in segregation imposed an atypical and significant hardship sufficient to violate due process. *See Sandin v. Conner*, 515 U.S. 472, 484, 486 (1995). Courts have rejected due process claims arising from confinement to segregation for far longer than that experienced by Plaintiff. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 576-77 (6th Cir. 2005) (designation as member of a Security Threat Group and permanent restrictions imposed as a result of that designation not an atypical and significant hardship in relation to the ordinary incidents of prison life); *Sarmiento v. Hemingway*, 93 F. App'x 65, 66 (6th Cir. 2004) ("Generally, unless placement in disciplinary confinement is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no interest to remain free of disciplinary confinement will be found in the case.").

The allegations of the complaint are also insufficient to state a claim against Defendant Cagle for violating Plaintiff's right to due process in his disciplinary hearing on the charge of refusing a drug test. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that, where a prisoner is charged with a disciplinary offense that may result in loss of good time credit, due process requires (i) written notice of the charges at least twenty-four hours prior to the hearing, *id.* at 563-64; (ii) the opportunity to "call witnesses and present

10

documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals," *id.* at 566; and (iii) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action, *id.* at 564.

The complaint sets forth no facts alleging that Partin had a liberty interest in the outcome of the disciplinary hearing, such as a loss of good time credit. The only punishment imposed as a result of the finding of guilt was a $25 fine. Punishments such as the loss of package privileges, minor fines and restitution do not constitute an atypical and significant hardship in the context of prison life. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). Even if there were a liberty interest, there is no allegation that the disciplinary hearing was not conducted in accordance with the procedures required by *Wolff*. Partin alleges only that Defendant Cagle reached the wrong result.

Partin's claims of excessive force and inadequate medical care arise under the Eighth Amendment, which prohibits cruel and unusual punishment. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Brooks v. Celeste*, 39 F.3d 125, 127-28 (6th Cir. 1994); *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298. The subjective component requires that the official act with the

requisite intent, that is, that he have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 297, 302-03.

With regard to claims of excessive force by prison officials, "[t]he test for whether the use of force violates the Eighth Amendment requires a court to determine if the defendant's conduct caused the unnecessary and wanton infliction of pain." *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010) (internal quotation marks omitted). That question "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (internal quotation marks omitted); *see also Hudson*, 503 U.S. at 6-7.

In *Hudson*, the Supreme Court held that a significant physical injury is not required to establish the objective component of an Eighth Amendment claim. 503 U.S. at 7-9. However, the Supreme Court made clear that every physical contact does not violate the Eighth Amendment:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d [1028,] 1033 [(2d Cir. 1973)] ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chamber, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind." *Whitley*, 475 U.S., at 327, 106 S. Ct., at 1088 (quoting *Estelle*, *supra*, 429 U.S., at 106, 97 S. Ct., at 292) (internal quotation marks omitted).

*Id.* at 9-10.

The Supreme Court re-emphasized, however, in *Wilkins v. Gaddy*, 559 U.S. 34 (2010), that claims of excessive force do not require any particular quantum of injury, and the extent of injury is only one factor bearing on whether the use of force was necessary in a particular situation. *Id.* at 37. The Court stated, "[i]njury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 38.

In this case, Partin alleges that he was beaten severely and without justification after asking if he could sit in a different position. (ECF No. 10 at 5.) While the incident report states that Partin became "combative" after being told he had to kneel (Ex. 1, ECF No. 10-1), he alleges that he did not actually resist or "offer violence to anyone" (ECF No. 10 at 5). With regard to Defendant Woodard, Partin alleges only that Woodard tried to "throw" him, the result of which was that Partin "went to his knees with his hands behind his back." (*Id.*) That action by itself does not rise to the level of an Eighth Amendment violation. Instead, the most severe physical assaults, including the use of a taser, allegedly was inflicted by several unnamed "John Doe" defendants. (*Id.* at 5-6.) Because Partin does not allege that a specific defendant committed those acts, he fails to meet the subjective component of an Eighth Amendment claim for excessive force.

Partin further alleges that after he was thrown into the shower by the unnamed defendants, Defendant Rogers "was standing at the shower door when the Plaintiff turned around." (*Id.* at 6.) Rogers allegedly got Partin out of the shower, replaced the zip ties on

13

his wrists with handcuffs, and escorted him to medical. (*Id.* at 6-7.) Partin does *not* allege that Rogers participated in the use of excessive force or that he arrived on the scene in time to stop it.

The Court concludes the allegations against Defendants Woodard and Rogers are insufficient to state an Eighth Amendment claim for excessive force.

The objective component of an Eighth Amendment claim for inadequate medical care requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (internal quotation marks and citations omitted); *see also Santiago v. Ringo*, 734 F.3d 585, 590 (6th Cir. 2013) (same); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (same). Alternatively, where a prisoner complains about a delay in medical treatment, the Court will "examine the seriousness of a deprivation by examining the effect of the delay in treatment." *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

To establish the subjective component of an Eighth Amendment medical claim, a prisoner must demonstrate that the prison official acted "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th

Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

> *[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.* This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment.").

"'[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show

15

more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). "When a doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.*; *see also Johnson*, 398 F.3d at 875 (same). "'[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 836). "A medical decision not to order an X-ray, or like measures, does not represent cruel or unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court." *Estelle*, 429 U.S. at 107.

Partin's allegations regarding a lack of medical care are somewhat clarified by an exhibit that he has attached to the amended complaint. He alleges in the complaint that he asked Defendant Tucker to stitch his head but was then "denied treatment." (ECF No. 10 at 7.) However, Exhibit 18 to the amended complaint is a letter from NWCX Nurse Christi Gregory, the Health Services Administrator, in which she responded to Partin's concerns and complaints about his care by detailing the medical care he received after the June 14, 2016 incident. (Ex. 18, ECF No. 10-20.)

The letter from Nurse Gregory states that when Partin was initially taken to medical immediately after the incident at about 6:20 p.m., Defendant Tucker asked him to "move into the ER area of the infirmary to be prepped for sutures," but Partin refused to do so. (*Id.* at 1.) However, his wounds were cleaned and dressed, and he was released to security. (*Id.*)

16

Later that night, at approximately 9:20 p.m., Partin was brought back to the clinic complaining of elbow pain and asking that his head be sutured. (*Id.*) Because Defendant Tucker had already left for the night, Partin's facial wound was again cleaned, "steri strips" were placed to close the wound, and a band-aid was applied. (*Id.*) The next day, June 15, 2016, dermabond was applied to the facial wound. (*Id.*) Partin also was examined on June 18, 2016 and on June 23, 2016. (*Id.*) The examination by the medical provider on June 23 was normal, with healing bruises and abrasions. (*Id.*) She prescribed Naprosyn 500mg for pain for thirty days and ordered x-rays of Partin's elbows, neck, right knee, lumbar spine and both clavicles; all of the x-rays were negative for any findings. (*Id.*)

Partin's amended complaint does not attempt to specifically explain the seeming discrepancy between Partin's claim that he was denied medical treatment and Nurse Gregory's description of the medical treatment he received. However, the Court notes that Partin does allege that he "requested medical treatment and has requested since 6-14-16. The Plaintiff *finally received* his cards of Naproxen 500mg on 7-3-16 at about 4:40 am." (ECF No. 10 at 8 (emphasis added).) Thus it appears that Partin's real concern regarding his medical treatment is that he was not immediately provided with any pain medication.

Given the information set forth in Exhibit 18, the Court finds that Partin has failed to sufficiently allege that any Defendant acted with deliberate indifference with regard to his need for medical care. At most, Partin has alleged a claim of medical malpractice, which does not rise to the level of an Eighth Amendment violation.

17

For the foregoing reasons, Partin's amended complaint is subject to dismissal in its entirety for failure to state a claim upon which relief can be granted.

## III. Conclusion

The Court DISMISSES Partin's amended complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b(1). Leave to file a further amendment is DENIED. Partin's motion for appointment of counsel (ECF No. 13) is DENIED as moot.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the

installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the second dismissal of one of his cases as frivolous or for failure to state a claim.[2] This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

  s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[2] *See Partin v. Scott, et al.*, No. 11-2680-JDT-cgc (W.D. Tenn. Feb. 29, 2012) (dismissed for failure to state a claim), *aff'd*, No. 12-5276 (6th Cir. Oct. 22, 2012).